IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL HARPER, | : | CIVIL ACTION NO. **1:CV-08-2272** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFERY BEARD, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On December 19, 2008, Plaintiff, Daniel Harper, currently an inmate at the State Correctional Institution at Graterford ("SCI-Graterford"), Graterford, Pennsylvania, filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff properly filed his action in the United States District Court for the Middle District of Pennsylvania since he was an inmate in the Middle District of Pennsylvania at the relevant time and his claims relate to the conditions at his prior place of confinement, namely, SCI-Camp Hill. The three (3) Defendants are employed by the Pennsylvania Department of Corrections ("PA DOC"). Two Defendants (not Beard) were employed at SCI-Camp Hill during the relevant times of this case.[1] Plaintiff also filed a Motion to

---

[1] Plaintiff indicates that he has exhausted his DOC administrative remedies with respect to his present claims. (Doc. 1, p. 1, ¶ II.).

In his first page taken from a form civil rights Complaint, the Plaintiff indicates that he has utilized the grievance procedure available at SCI-Camp Hill, and that he completed the grievance process. (Doc. 1, Complaint, p. 1).

It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under §1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life,

proceed *in forma pauperis* Motion. (Doc. 2).

Plaintiff names the following three (3) Defendants: Jeffery A. Beard, Secretary of the Pennsylvania Department of Corrections; Lieutenant ("Lt.") Chiles, RHU Lt. at SCI-Camp Hill; and Kelsoe, Correctional Officer ("CO") at SCI-Camp Hill.

This Court has jurisdiction over this § 1983 civil rights case pursuant to 28 U.S.C. § 1331 and § 1343.

**II. Allegations of Complaint.**

As stated, Plaintiff names three Defendants. Both Defendants Kelsoe and Chiles (and not Defendant Beard, Secretary of the PA DOC) were employed at SCI-Camp Hill during the relevant times of this case.

Plaintiff avers that on October 4, 2008, while he was confined in the RHU at SCI-Camp Hill, he was assaulted when he was handcuffed in his cell by Defendant CO Kelsoe. (Doc. 1, p. 2). Plaintiff also states that the living conditions in his RHU cell at SCI-Camp Hill were disgusting since the toilet leaked, there were rats and roaches all over the place, feces and urine were on the walls, and the cells were not cleaned when the inmates formerly confined in them left. (*Id*.). Plaintiff indicates that Defendants Chiles and Beard are liable for his Eighth Amendment conditions of confinement claim, but he fails to state how either one of these supervisory Defendants was

---

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. As stated, Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). We also note that the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

personally involved with the cleaning of the RHU cells after an inmate was re-assigned or how they were responsible for fixing the toilet and exterminating the pests in the RHU.

Plaintiff also alleges that from September 16, 2008 to October 10, 2008, he was not fed on numerous occasions and that he lost over 20 pounds during this time. Plaintiff indicates that Defendants Chiles and Kelsoe were responsible for the failure to provide him with meals during the stated three-week period. Plaintiff states that at one point, he did not eat for six days. Plaintiff further avers that he was verbally harassed and given false write-ups. Finally, Plaintiff alleges that starting on November 15, 2008 and for three (3) days, he had to sleep with no mattress, jump suit or covers even though the window was opened. Plaintiff avers that he was also deprived of showers, shaves, a Bible, and contact with his lawyer and the law library. (*Id*.).[2]

As relief, Plaintiff seeks an award for pain and suffering, presumably a monetary award. Plaintiff does not indicate if he was physically injured by the alleged assault on him by Defendant Kelsoe. We note that Plaintiff cannot recover monetary damages for pain and suffering absent a physical injury.[3]

Plaintiff also requests that action be taken against the RHU prison officials for the manner in which they treat inmates. (*Id*., p. 3). This Court has no authority in a § 1983 civil rights action

---

[2]As discussed below, we do not find a First Amendment denial of access to courts claim and a First Amendment free exercise of religion claim are stated in Plaintiff's Complaint.

[3]Plaintiff seeks damages for pain and suffering, *i.e.* mental injury, and this claim may be precluded since he has not alleged physical injury. *See* 42 U.S.C. § 1997e(e). The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury. Here, the Plaintiff does not claim any physical injury. Thus, a claim for damages for emotional distress may be precluded. *Allah v. Al-Hafeez,* 226 F.3d 247, 250-251( 3d Cir. 2000). *See also Mower v. DCP*, 2005 WL 1322738 (M.D. Pa.).

to take disciplinary action against the Defendant employees of the PA DOC.

Plaintiff also seeks a "lesser sentence" with respect to his one- to four-year state court sentence due to all of the alleged conduct he had to endure at SCI-Camp Hill. This relief request is not proper in a §1983 civil rights action. *See Medina v. Morton*, 2006 WL 758302, * 5 (D.N.J. Mar.17 2006) ("In *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973), the Supreme Court held that a habeas petition is the proper mechanism for an inmate to challenge the "fact or duration" of his confinement.").

Plaintiff does not state if he sues Defendants in their official or individual capacities. (Doc. 1pp. 1-3).[4]   Since Plaintiff is seeking monetary damages from Defendants, he can only sue the state Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

**III.  PLRA.**

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 2). The Prison Litigation Reform Act of 1995,[5] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis*

---

[4]Insofar as Plaintiff has requested monetary damages, if he sues Defendants in their official capacities, this request is barred by the Eleventh Amendment. The Eleventh Amendment does not bar a suit against a state official in his personal capacity. *See Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir.) (Non-Precedential). However, since Plaintiff requests compensatory damages as relief as against Defendants, we conclude that he sues Defendants in their individual or personal capacities since the Eleventh Amendment does not bar suits against state officials for monetary damages in their personal capacities. (Doc. 1, p. 3). *Atwell, supra.*

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

pursuant to 28 U.S.C. § 1915.[6]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

**IV.  Section 1983 Standard.**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[7]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

---

[6]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts.  The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account. (Docs. 3 and 6).

[7]Plaintiff alleges in his pleading that the Defendant are employees of the  PA DOC. (Doc. 1, p. 2).   This is sufficient to show that the Defendants are state agents.

**V. Motion to Dismiss Standard.**

The Court in *O'Connell v. Sobina*, 2008 WL 144199, *2 (W.D. Pa.), set forth the new standard to dismiss, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, –U.S. –, 127 S. Ct. 1955 (2007), as follows:

> As the United States Supreme Court recently held in
> *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (May 21, 2007), a complaint must
> be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege
> "enough facts to state a claim to relief that is plausible on
> its face." *Id*. at 1974 (rejecting the traditional 12(b)(6) standard
> set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99,
> 2 L.Ed.2d 80 (1957)). The court must accept as true all
> all allegations of the Complaint and all reasonable factual
> inferences must be viewed in the light most favorable to plaintiff.
> *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944
> (3d Cir. 1985). The Court, however, need not accept inferences
> drawn by plaintiff if they are unsupported by the facts as set
> forth in the complaint. *See California Pub. Employee Ret. Sys. v.*
> *The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing
> *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906
> (3d Cir. 1997)). Nor must the court accept legal conclusions
> set forth as factual allegations. *Bell Atlantic Corp.*, 127 S.Ct.
> at 1965 (citing *Papas an v. Allain*, 478 U.S. 265, 286, 106 S.Ct.
> 2932, 92 L.Ed.2d 209 (1986)). "Factual allegations must be
> enough to raise a right to relief above the speculative level."
> *Bell Atlantic Corp.*, 127 S.Ct. at 1965. Although the United
> States Supreme Court does "not require heightened fact pleading
> of specifics, [the Court does require] enough facts to state a claim
> to relief that is plausible on its face." *Id* at 1974.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

In his Complaint's Statement of Claim Section, Plaintiff does not mention any specific

allegations against Defendant Beard. Plaintiff's allegations do not state any Eighth Amendment claim against Defendant Beard. As discussed below, we will recommend that this DOC supervisory Defendant be dismissed. Also, as discussed below, we find that Plaintiff has stated an Eighth Amendment excessive force claim against Defendant Kelsoe and an Eighth Amendment conditions of confinement claim against Defendants Kelsoe and Chiles only to the extent that he avers he was deprived food on numerous occasions during the stated three-week period. We will now discuss Plaintiff's claims against Defendants.

**VI. Discussion.**

    *A.    Eighth Amendment Conditions of Confinement Claims against Defendants Chiles and Beard*

Plaintiff alleges that his Eighth Amendment rights were violated by Defendants Chiles and Beard in October 2008 with respect to the failure of the prison staff to properly clean his RHU cell at SCI-Camp Hill after other inmates left the cell, and with respect to the leaking toilet, the pests, and the urine and feces on the cell walls. Neither supervisory Defendant is alleged to have been personally responsible for cleaning Plaintiff's RHU cell or for fixing cell plumbing and exterminating pests.

As the Third Circuit Court stated in *Goodrich v. Clinton County Prison*, 214 Fed. Appx. 105, 112 (3d Cir. 2007) "a supervisor may be personally liable under § 1983 'if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations,' *A.M.,* 372 F.3d at 586 ... ."

We find that Plaintiff has not stated Eighth Amendment conditions of confinement claims as against Defendants Secretary Beard and Lt. Chiles since they were not alleged to have had any

personal involvement with the improper conditions of Plaintiff's RHU cell at SCI-Camp Hill. We find that these supervisory Defendants are named only as parties with respect to Plaintiff's first claim based on *respondeat superior*. Additionally, Plaintiff does not state that these Defendants knew their subordinates failed to properly clean his RHU cell or failed to provide him with food at SCI-Camp Hill.

Even if the personal involvement of Defendants Chiles and Beard were stated with respect to the conditions of confinement claim regarding the failure to clean Plaintiff's RHU cell, to exterminate pests and to fix his plumbing, these conditions alleged by Plaintiff do not amount to Eighth Amendment violations.

As the Court stated in *Ebersole v. PA*, 2007 WL 2815730, *9-*10 (M.D. Pa.):

> Although the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of basic human needs, *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22, (1993), it does not mandate that prisons be free of discomfort. *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard. *Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir.1985); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 757 (3d Cir.1979).
>
> To sustain an Eighth Amendment claim, an inmate must also show that the defendants acted with "a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Specifically, an inmate must prove that the defendant demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. *Farmer v. Brennan,* 511 U.S. 825, 836-37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In this case, the atmosphere in the prison kitchen, although certainly unprofessional, does not begin to approach the conditions prohibited by the Eighth Amendment.

In *Perez v. Federal Bureau of Prisons*, 229 Fed.Appx. 55, 57 (3d cir. 2007), the Court stated:

"It is clear that a prisoner's claim under the eighth amendment must establish more egregious conduct than that adequate to support a common law tort. *Williams v. Mussomelli,* 722 F.2d 1130, 1133 (3d Cir.1983). Accordingly, prison conditions constitute a violation of the Eighth Amendment when they "involve the wanton and unnecessary infliction of pain [or are] grossly disproportionate to the severity of the crime warranting imprisonment." *Peterkin v. Jeffes,* 855 F.2d 1021, 1023 (3d Cir.1988). An altered security classification that allows limits on telephone privileges certainly does not rise to this level. *See Inmates of Occoquan v. Barry,* 844 F.2d 828, 836 (D.C.Cir.1988) ("[T]he 'deprivations' that trigger Eighth Amendment scrutiny are deprivations of essential human needs," such as concern over physical safety, and deprivation of food, medical care, or sanitation.).

In *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 417-18 (3d Cir. 2000), the Court stated:

"Prison conditions may amount to cruel and unusual punishment if they cause unquestioned and serious deprivations of basic human needs .... [that] deprive inmates of the minimal civilized measure of life's necessities." *Id.* at 347, 101 S.Ct. 2392. Accordingly, when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety. *DeShaney v. Winnebago Co. Dep't of Social Svcs.*, 489 U.S. 189, 199-200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

To demonstrate a deprivation of his basic human needs, a plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference. *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996) (*citing Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991))."

While the conditions in the RHU cell at SCI-Camp Hill alleged by Plaintiff may have called for cleaning and repairs, these conditions fall well short of the inhumane conditions prohibited by

the Eighth Amendment. *See Ebersole, supra.* Moreover, Plaintiff's allegations as against Defendants Chiles and Beard regarding the lack of cleanliness in his RHU cell are not sufficient to show the actual knowledge required to state their personal involvement with respect to Plaintiff's Eighth Amendment conditions of confinement claim. *See Bullock v. Horn*, 2000 WL 1839171, * 5 (M.D. Pa.).

Therefore, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Chiles and Beard with respect to the failure to clean Plaintiff's RHU cell, to exterminate pests and to fix his plumbing, be dismissed. Since Defendant Beard is not alleged to have violated any other rights of Plaintiff, we will also recommend that this Defendant be dismissed entirely from this case.[8]  *See O'Connell v. Sobina*, 2008 WL 144199, * 21; *Rizzo v. Goode*, 423 U.S. 362 (1976).

---

[8] Plaintiff does not allege that Defendant Beard personally prevented him from having showers, shaves, a Bible, contact with his lawyer, and access to the law library.

> B.   *Eighth Amendment Conditions of Confinement Claim against Defendants Chiles and Kelsoe for failure to provide meals from September 16, 2008 through October 10, 2008*

Based upon the above stated standard, we find that Plaintiff has stated an Eighth Amendment conditions of confinement claim against Defendants Chiles and Kelsoe for their alleged failure to feed him on numerous occasions from September 16, 2008 through October 10, 2008, including six consecutive days without food, which resulted in his loss of over 20 pounds. Plaintiff has stated inhumane conditions regarding his allegations that Defendants Chiles and Kelsoe did not provide him with food, which created an excessive risk to Plaintiff's safety in violation of the Eighth Amendment.   (Doc. 1, p. 2).

However, we do not find that Plaintiff has stated an Eighth Amendment conditions of confinement claim against Defendants Chiles and Kelsoe with respect to the alleged three days in November 2008 that Plaintiff had to sleep with an open window and without a mattress, a jump suit, and covers.  Nor do we find an Eighth Amendment conditions of confinement claim against Defendants Chiles and Kelsoe with respect to Plaintiff's allegation that he was deprived of showers and shaves.  (*Id*.).  While prison officials have a duty to protect inmates from harm, Plaintiff has failed to state that Defendants Chiles and Kelsoe were deliberately indifferent to his safety with respect to the stated allegations of no showers, shaves, covers, mattress, and jump suit for three days.

Moreover, to the extent that Plaintiff alleges that Defendants Chiles and Kelsoe verbally harassed him and gave him "false write ups", we do not find that any constitutional claim is stated.

As the Court stated in *Wright v. O'Hara*, 2004 WL 1793018 (E.D. Pa.) * 7, "[w]here Plaintiff

has not been physically assaulted, Defendant's words and gestures alone are not of constitutional merit." (Citation omitted). The *Wright* Court also stated:

> "Mean harassment . . . is insufficient to state a constitutional deprivation." *Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993). Verbal abuse or threats alone do not state a constitutional claim. *See Maclean v. Secor*, 876 F.Supp. 695, 698 (E.D. Pa. 1995). "This is so because '[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment. *Ramos v. Vaughn*, No. 94-2596, 1995 U.S. Dist. LEXIS 2164 at *12 (E.D.Pa. June 27, 1995), *quoting Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

*Id.* * 6.

In the *Wright* case, Plaintiff alleged that the CO verbally threatened and harassed him and lunged towards him with a fist, without any physical contact. The *Wright* Court concluded that this conduct, "while inappropriate, does not give rise to an Eighth Amendment violation as it is not 'sufficiently serious'." *Id.* *7 (citation omitted). Plaintiff Harper alleges verbal harassment in his second Eighth Amendment claim against Defendants Chiles and Kelsoe without physical contact. (Doc. 1, p. 2).[9] If true, this conduct would certainly be inappropriate, but it does not state an Eighth Amendment claim.

Thus, Plaintiff has not raised a constitutional violation with respect to the alleged verbal harassment by Defendants Chiles and Kelsoe. Therefore, we find an Eighth Amendment claim has

---

[9] In his first Eighth Amendment excessive force claim, Plaintiff alleges that only Defendant Kelsoe assaulted him one time on October 4, 2008, and he does not allege he was physically injured. However, with respect to his claim of verbal harassment against both Defendants Chiles and Kelsoe contained in his second Eighth Amendment claim, Plaintiff does not state that he was physically assaulted.

not been asserted with respect to Defendants Chiles' and Kelsoe's alleged verbal abuse towards Plaintiff, and we will recommend that this claim be dismissed.

Nor do we find that Plaintiff's allegation that Defendants Chiles and Kelsoe issued false misconducts against him state a constitutional claim because the filing of a false misconduct report does not constitute a violation of an inmate's constitutional rights.

In *O'Connell v. Sobina*, 2008 WL 144199, * 16, the Court stated that:

> A prisoner does not have a constitutional right to be free from
> being falsely or wrongly accused of conduct that may result in
> the deprivation of a protected liberty interest. *Freeman v. Rideout*,
> 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982,
> 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). In other words, the mere
> filing of false charges against an inmate does not constitute a *per se*
> constitutional violation. *Id.*

*See also Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.).

C.   *Eighth Amendment Excessive Force Claim against Defendant Kelsoe*

Plaintiff states that on October 4, 2008, Defendant Kelsoe assaulted him in his cell while he was handcuffed. Plaintiff does not state if he was physically injured, but he seeks monetary damages for pain and suffering.

As this Court stated in *Freeman v. Bronkoski*, 2008 WL 4414725, *4 (M.D. Pa.):

The Third Circuit Court of Appeals has noted that "[a]fter conviction, the
Eighth Amendment serves as the primary source of substantive protection
in cases where an inmate challenges a prison official's use of force as
excessive and unjustified. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).
In considering such a claim, the fact-finder must determine " 'whether force
was applied in a good-faith effort to maintain or restore discipline, or
maliciously and sadistically to cause. harm." " *Id.* (quoting *Hudson v. McMillan*,
503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). When " 'it appears
that the evidence, viewed in the light most favorable to the plaintiff, will
support a reliable inference of wantonness in the infliction of pain," summary

> judgment is inappropriate for the defendant. *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).  Five factors apply in determining whether a correctional officer used excessive force: "(1) 'the need for the application of force;" (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of the injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of the response.'" *Id*. (quoting *Whitley*, 475 U.S. at 321).

*See also Bright v. Gillis*, 89 Fed. Appx. 802, 805 (3d Cir. 2004) (Court stated the factors in establishing an Eighth Amendment excessive force claim against prison staff).

The Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *6, stated, "[t]he core inquiry in claims of excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." (Citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)).

At the screening stage, even though it is not clear if the force allegedly used was *de minimis*, we find that Plaintiff has sufficiently stated an Eighth Amendment excessive force claim against Defendant Kelsoe in light of the averment that Plaintiff was handcuffed at the time.

    D.    *First Amendment Free Exercise Claim and Denial of Access to Courts Claim*

Plaintiff simply alleges that Defendants Chiles and Kelsoe deprived him of a Bible and contact with his lawyer, and that he was not allowed to use the law library.  Plaintiff does not state how long the alleged deprivations occurred.  Nor does Plaintiff state that the deprivations prevented him from practicing his religion or that one of his court cases was actually injured.

In *Branch v. Russian*,  2005 WL 1137879, * 7 (M.D. Pa.), the Court stated:

> Individuals have a constitutionally protected right to follow the religious teachings and practices of their choice.  *Employment Div. v.*

14

> *Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876
> (1990). This right may be limited by law of general applicability,
> restricting both religious and non-religious conduct, but reasonable
> accommodations for religious observance may be required in
> certain circumstances. *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205,
> 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Particularly in the
> prison context, where inmates are precluded from engaging in a
> variety of otherwise permissible activities, officials may be
> required to provide exemptions from restrictions that place a
> "substantial burden" on an inmate's adherence to "sincerely held
> religious beliefs," unless the officials offer compelling reasons for
> refusing such accommodation. *See* 42 U.S.C. § 2000cc-1(a);
> *see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

In *Branch*, the Plaintiff inmate claimed that prison policy DC-ADM 807, hygiene and grooming policy, violated his right to free exercise of religion. This Court found that Plaintiff Branch failed to establish the threshold element of such a claim, since he did not explain how long hair affected his religious beliefs and only alleged that he took a vow requiring him to keep long hair. Thus, Plaintiff Branch did not establish a burden on the exercise of his religion.

In the instant case, we find that Plaintiff Harper has not stated a free exercise of religion constitutional claim under the First Amendment.[10] Plaintiff has not stated that the alleged deprivation of a Bible imposed a substantial burden on his religious exercise. Nor do we find that Plaintiff has stated a First Amendment denial of access to the courts claim.

As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, * 1 (3d Cir. 2007) (Non-precedential):

---

[10]The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

> An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing. *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.* at 351. *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment right to subsidized mail). However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence of conditions of confinement. *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell*, 2008 WL 144199, * 10, the Court stated:

> In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Christopher*, 536 U.S. at 415.

In his Complaint, Plaintiff does not allege that any injury occurred to any court case he had with respect to his claim that he was deprived of use of the law library, and that he was denied contact with his lawyer  Thus, we will recommend that Plaintiff's First Amendment denial of access to courts claim be dismissed.

**VII. Recommendation.**

Based on the above, we respectfully recommend that Plaintiff's October 4, 2008 Eighth Amendment conditions of confinement claim against Defendants Chiles and Beard regarding the

16

cleanliness of his RHU cell be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Also, we recommend that Defendant Beard be dismissed entirely from this case.  We recommend that Plaintiff's First Amendment free exercise of religion and access to courts claims, and his claims relating to verbal harassment and being issued false misconduct reports, be dismissed.  Further, we recommend that Plaintiff's October 4, 2008 Eighth Amendment excessive force claim against Defendant Kelsoe be allowed to proceed.  Additionally, we recommend that Plaintiff be allowed to proceed with respect to his Eighth Amendment conditions of confinement claim against Defendants Chiles and Kelsoe only for their alleged failure to feed him on numerous occasions from September 16, 2008 through October 10, 2008, including six consecutive days without food, which resulted his loss of over 20 pounds.

Finally, we recommend that this case be remanded to the undersigned for further proceedings as against Defendants Chiles and Kelsoe, including the granting of Plaintiff's *in forma pauperis* motion (Doc. 2) and directing service of his Complaint on the stated two Defendants.

                                          **s/ Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: January 13, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL HARPER, | : | CIVIL ACTION NO. **1:CV-08-2272** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| JEFFERY BEARD, et al., | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 13, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                         s/ Thomas M. Blewitt
                         **THOMAS M. BLEWITT**
                         **United States Magistrate Judge**

**Dated: January 13, 2009**